**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| DIESEL GRINDING SERVICES, LLC,<br>933 Osceola Ave.<br>Sullivan's Island, South Carolina 29482,<br><br>    Plaintiff,<br><br> v.<br><br>ED'S EQUIPMENT, INC.,<br>4567 East 71st Street<br>Cleveland, Ohio 44105,<br><br>and<br><br>JOHN DOE,<br>Address unknown,<br><br>    Defendants. | Case No. 1:23-cv-2165<br><br>**JURY DEMAND<br>ENDORSED HEREIN** |

## **COMPLAINT**

Plaintiff Diesel Grinding Services, LLC ("Diesel Grinding"), through counsel and for its Complaint against Defendant Ed's Equipment, Inc. ("Ed's Equipment"), states as follows:

1. This is a dispute over a 2014 DZH 4000TK-18 Diamond Z horizontal grinder SN# 1R9FX3904DC722018 ("Grinder")—a piece of heavy machinery that Ed's Equipment lured Diesel Grinding into buying with false representations and now refuses to hand over despite Diesel Grinding's $400,000 payment in full.

2. Diesel Grinding brings claims of fraud, negligent misrepresentation, breach of contract, replevin, conversion, and unjust enrichment not only to recover possession of the equipment it paid for, but also the consequential damages of lost customers whose work depended on the grinder, punitive damages, attorneys' fees, and costs.

1

## PARTIES AND JURISDICTION

3. Plaintiff Diesel Grinding Services, LLC is a limited liability company organized under the laws of South Carolina.

4. Diesel Grinding is owned by Edward Mabry III ("Mabry"), a resident of South Carolina. Mabry is the sole member of Diesel Grinding and is a South Carolina citizen.

5. Defendant Ed's Equipment, Inc. is an Ohio corporation with a principal place of business at 4567 East 71st Street, Cleveland, Ohio and is thus a citizen of Ohio.

6. Defendant John Doe is an individual and/or business entity that previously owned the Grinder, whose identity and/or form of business organization are not known to Plaintiff at this time, but who is believed to be a citizen of Texas.

7. Personal jurisdiction and venue are proper in this Court because Defendant is a resident of Cleveland, Ohio, the acts giving rise to this Complaint occurred in Cleveland, Ohio, and the property at issue, the Grinder, is located in Cleveland, Ohio.

8. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332, as it is between citizens of different states with an amount in controversy that exceeds $75,000, exclusive of interest and costs.

## GENERAL ALLEGATIONS

*A.  Diesel Grinding Purchased a Grinder from Ed's Equipment Based on Misrepresentations About Its Condition.*

9. In May 2023, Diesel Grinding was in the market to purchase a horizontal grinder.

10. Ed Mabry of Diesel Grinding contacted Ed Urbanek ("Urbanek") of Ed's Equipment to inquire about a Grinder that was for sale.

11. Upon information and belief, and based on Urbanek's representations, Urbanek was acting as an authorized agent for John Doe, an unknown seller in Texas, and had apparent authority to negotiate the sale of the Grinder to Diesel Grinding for John Doe.

12. Mabry and Urbanek negotiated a price for the Grinder over the phone and via text message.

13. On May 26, 2023, Urbanek sent Mabry pictures of the Grinder, including these:

 

14. Urbanek represented to Mabry that the Grinder was "in good shape," and did not need any major repairs. Urbanek also represented that the Grinder had approximately 4,800 to 4,900 hours of usage as reflected on an "hours meter" (similar to a car's odometer):



15. Urbanek also represented via phone call that the grinder "could go to work right now."

16. Based on these representations, Mabry decided that he wanted to purchase the Grinder and took steps to obtain financing.

17. To assist Mabry in the financing process, Urbanek sent an invoice to the financer, Dakota Financial LLC ("Invoice"). The Invoice is attached as Exhibit A.

18. The Invoice, dated June 7, 2023, stated that the Grinder had approximately 5,800 hours—a thousand more than Urbanek represented to Mabry in the days prior.

19. The Invoice also stated that the "Machine is in good working order and will be fully serviced and inspected at Eds Equipment Inc . . . Freight, service and parts not included." *See* Ex. A, Invoice.

20. The Invoice listed the price of the Grinder as $400,000. *See* Ex. A, Invoice.

21. Mabry did not see the invoice when it was sent to Dakota Financial LLC, or at any point before he paid for the Grinder.

22. Between June 8, 2023, and June 29, 2023, through a series of text messages, the representatives of Diesel Grinding and Ed's Equipment came to an agreement where Diesel Grinding would pay $400,000 for the Grinder, plus the freight fees to deliver the Grinder from Texas to Ed's Equipment in Cleveland, Ohio, for minor servicing before the Grinder would be delivered to Diesel Grinding. Diesel Grinding and Ed's Equipment agreed that the labor and parts costs associated with the servicing would be paid for separately.

23. Diesel Griding then paid $400,000 cash to Ed's Equipment for the Grinder on June 29, 2023.

24. Urbanek signed the Invoice on behalf of Ed's Equipment, noting that it was "paid in full" on June 29, 2023. *See* Ex. A, Invoice.

### B. *Ed's Equipment Refuses to Transfer Possession of the Grinder*

25. After purchasing the Grinder, Mabry asked Urbanek to send more pictures, including a picture of the hours meter.

26. Mabry asked for these photos on three separate occasions with no response.

27. Mabry finally heard back on July 21, 2023, when Urbanek sent several pictures of the Grinder. Some of the photos were blurry, and they did not include a picture of the hours meter.

28. In addition, the photos showed that there was a panel missing off the Grinder:



29. Another photo showed damage to and corrosion of the Grinder:



30. Mabry raised the perceived degraded condition of the Grinder with Urbanek.

31. The Grinder was eventually delivered from Texas to Ed's Equipment on July 28, 2023.

32. Those at Ed's Equipment determined that the Grinder needed work but assured Mabry and Diesel Grinding that it had all the parts in stock to make the repairs.

33. On August 1, 2023, Urbanek finally sent Mabry a picture of the hours meter, which showed 6,852.9 hours and not the 4,900 or 5,800 hours that Urbanek and Ed's Equipment represented before the sale:

6



34. Had Mabry known that the Grinder that 6,852.9 hours, Mabry would not have purchased the Grinder or would not have paid $400,000 for the Grinder.

35. Mabry raised the misrepresented hours with Urbanek and shared his intention to take legal action.

36. Urbanek and Mabry then discussed a possible resolution but reached an impasse.

37. During this time, Ed's Equipment dissembled the Grinder to begin making the repairs it deemed necessary.

38. Ed's Equipment now refuses to deliver the Grinder that Diesel Grinding paid for, alleging that it incurred $26,226.49 in transport, parts, and labor to service the Grinder—which Urbanek represented pre-sale as being in "good working condition" and only needing minor work.

39. To date, Ed's Equipment has still not transferred possession of the Grinder to Diesel Grinding.

40. Diesel Grinding does not know the current condition of the Grinder or how much in additional parts and labor may be necessary to make the Grinder serviceable for construction work.

41. As a result, Diesel Grinding has incurred damages, including but not limited to, lost jobs that require the Grinder to complete the work.

## COUNT I – FRAUD

42. Diesel Grinding incorporates by reference each of the preceding paragraphs as if fully restated herein.

43. During the negotiation for the purchase and sale of the Grinder, Ed's Equipment represented to Diesel Grinding that the Grinder had approximately 4,800 to 4,900 hours of usage.

44. Ed's Equipment also represented to Diesel Grinding that the Grinder was in good working order, did not need major repairs and "could go to work right now."

45. The fact that the Grinder only had 4,900 hours and was in good working order and needed no major repairs was material to Diesel Grinding's decision to purchase the Grinder.

46. Ed's Equipment represented that the Grinder had 4,900 hours and was in good working order and needed no major repairs knowing those facts were false or with utter disregard and recklessness as to the truth.

47. Ed's Equipment intended to mislead Diesel Grinding into relying upon the facts that the Grinder had 4,900 hours and was in good working order and needed no major repairs.

48. Diesel Grinding justifiably relied upon Ed's Equipment's misrepresented facts as presented.

49. Had Mabry known that the Grinder had 6,852.9 hours of usage, Mabry would not have purchased the Grinder or would not have paid $400,000 for the Grinder.

50. Diesel Grinding suffered damages proximately caused by the reliance upon the misrepresentations of Ed's Equipment in an amount to be proven at trial.

51. In addition, Diesel Grinding is entitled to punitive damages as a result of Ed's Equipment's fraud.

## COUNT II – NEGLIGENT MISREPRESENTATION

52. Diesel Grinding incorporates by reference each of the preceding paragraphs as if fully restated herein.

53. Ed's Equipment, through the course of its business, supplied false information for the guidance of Diesel Grinding in its business transaction of purchasing the Grinder.

54. Diesel Grinding justifiably relied upon Ed's Equipment's false representations that the Grinder had 4,900 hours and was in good working order and needed no major repairs.

55. Ed's Equipment is subject to liability for the pecuniary loss caused to Diesel Grinding by relying upon such false representations.

56. Ed's Equipment failed to exercise reasonable care or competence in obtaining or communication the misinformation that the Grinder had 4,900 hours and was in good working order.

57. Diesel Grinding suffered damages proximately caused by the reliance upon the misrepresentations of Ed's Equipment in an amount to be proven at trial.

## COUNT III – BREACH OF CONTRACT

58. Diesel Grinding incorporates by reference each of the preceding paragraphs as if fully restated herein.

59. Diesel Grinding and Ed's Equipment entered into an agreement under which Diesel Grinding would purchase and Ed's Equipment would sell the Grinder culminating in the written, signed invoice.

60. The contract is a valid and enforceable contract between the parties.

61. Diesel Grinding fulfilled its obligations under the contract in all material respects, including by paying Ed's Equipment $400,000.

62. Ed's Equipment materially breached its obligations under the contract by refusing to transfer possession to Diesel Grinding and by not being able to deliver the Grinder identified in the contract, i.e., a 2014 DZH 4000TK-18 Diamond Z horizontal grinder SN# 1R9FX3904DC722018 with 5,800 hours.

63. As a result of Ed's Equipment's breach, Diesel Grinding has incurred significant damages, including the loss of jobs that require the use of the Grinder, plus additional direct, incidental, and consequential damages in an amount to be proven at trial.

**COUNT IV – SPECIFIC PERFORMANCE/REPLEVIN UNDER O.R.C. § 1302.90**

64. Diesel Grinding incorporates by reference each of the preceding paragraphs as if fully restated herein.

65. Diesel Grinding paid $400,000 to purchase the specific Grinder as agreed to by Ed's Equipment.

66. The 2014 DZH 4000TK-18 Diamond Z horizontal grinder SN# 1R9FX3904DC722018 is unique and Diesel Grinding may obtain possession of that Grinder only through specific performance and replevin.

67. Diesel Grinding's payment in full for the Grinder entitles it to possess the Grinder.

68. Ed's Equipment refuses to transfer possession of the Grinder to Diesel Grinding.

69. Diesel Grinding is willing and prepared to pay into Court to be held in escrow an amount necessary to satisfy a claimed security interest in the Grinder by Ed's Equipment, if any.

70. Diesel Grinding has suffered damages proximately caused by Ed's Equipment's withholding or detention of the Grinder.

71. Diesel Grinding is entitled to immediate and permanent possession of the Grinder, damages proximately caused by Ed's Equipment's withholding or detention of the Grinder, and costs of this action.

## COUNT V – CONVERSION

72. Diesel Grinding incorporates by reference each of the preceding paragraphs as if fully restated herein.

73. Diesel Grinding paid $400,000 to own the Grinder, and therefore has an interest in the Grinder.

74. Diesel Grinding has an immediate right to possess the Grinder.

75. Ed's Equipment has wrongfully interfered with Diesel Grinding's property rights by intentionally failing to transfer possession of the Grinder to Diesel Grinding.

76. Diesel Grinding has suffered damages as a result of Ed's Equipment's conversion of the Grinder and will continue to do so each day that Ed's Equipment continues to intentionally convert the Grinder.

## COUNT VI – UNJUST ENRICHMENT

77. Diesel Grinding incorporates by reference each of the preceding paragraphs as if fully restated herein.

78. Diesel Grinding conferred a benefit on Ed's Equipment when it paid $400,000 for the Grinder.

79. Ed's Equipment knew that it led Diesel Grinding into believing that it would transfer actual possession of the Grinder to Diesel Grinding.

80. Ed's Equipment knew Diesel Grinding paid $400,000 for actual possession of the Grinder.

81. Under the circumstances, it would be unjust for Ed's Equipment to retain both the Grinder and Diesel Griding's $400,000 payment in full for the Grinder.

82. As a result of Ed's Equipment's actions, Diesel Grinding suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Diesel Grinding LLC respectfully prays for judgment in its favor as follows:

- A. Specific performance/replevin of the Grinder to Diesel Grinding;
- B. An order of interim possession of the Grinder by Diesel Grinding;[1]
- C. An award of damages in an amount to be determined at trial;
- D. Punitive damages;
- E. Pre-judgment and post-judgment interest;
- F. Reasonable costs and expenses incurred by Diesel Grinding in the prosecution of this action, including reasonable attorneys' fees; and,
- G. Such other and further relief as this Court deems appropriate.

---

[1] Diesel Grinding Services, LLC is contemporaneously filing a Motion for Order of Possession pursuant to O.R.C. § 2737.03.

Dated: November 6, 2023                    Respectfully submitted,

*/s/ Dustin B. Rawlin*
Dustin B. Rawlin (0072870)
Savannah Fox (0097716)
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1100 Superior Ave.
Suite 2000
Cleveland, OH 44114
Tel:       216.304.6164
Fax:      216.553.4275
dustin.rawlin@nelsonmullins.com
savannah.fox@nelsonmullins.com

*Attorneys for Plaintiff Diesel Grinding Services, LLC*

## **JURY DEMAND**

Plaintiff Diesel Grinding Services, LLC hereby requests a trial by jury of the maximum number allowable by law on all causes of action so triable.

Dated: November 6, 2023                    Respectfully submitted,

*/s/ Dustin B. Rawlin*
Dustin B. Rawlin (0072870)
Savannah Fox (0097716)
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1100 Superior Ave.
Suite 2000
Cleveland, OH 44114
Tel:       216.304.6164
Fax:      216.553.4275
dustin.rawlin@nelsonmullins.com
savannah.fox@nelsonmullins.com

*Attorneys for Plaintiff Diesel Grinding, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing *Complaint* using the Court's CM/ECF system on November 6, 2023, which will send notification of filing to those attorneys registered with the Court on November 6, 2023.

Dated: November 6, 2023

Respectfully submitted,

*/s/ Dustin B. Rawlin*
Dustin B. Rawlin (0072870)
Savannah Fox (0097716)
NELSON MULLINS RILEY & SCARBOROUGH LLP
1100 Superior Ave.
Suite 2000
Cleveland, OH 44114
Tel:    216.304.6164
Fax:   216.553.4275
dustin.rawlin@nelsonmullins.com
savannah.fox@nelsonmullins.com

*Attorneys for Plaintiff Diesel Grinding, LLC*